FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 22 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WAYNE DECKER,

                        Petitioner,

    -against-

PHILIP HEATH, Superintendent,

                        Respondent.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-03294 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Wayne Decker brings this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his state conviction and sentence for murder in the second degree. The Petition is based primarily on Decker's contention that the fifteen year delay between the murder for which he was convicted and his indictment worked a violation of his right to a speedy trial and a deprivation of due process. For the reasons set forth below, the Petition is DENIED.

## Background

    On December 3, 1987, Victoria Mason was found beaten to death in Staten Island. The police questioned Decker as part of their investigation of the murder, but prosecutors ultimately declined to charge him with the crime and the case was closed without an arrest. Then, in 2002, fifteen years after the killing, the Richmond County District Attorney's Office ("DA's Office") reopened the investigation with Decker again as the focus. This time, prosecutors decided to move forward with charges, and, on November 26, 2002, Decker was indicted for Mason's murder.

1

Decker moved to dismiss the indictment arguing that the pre-indictment delay violated his rights to a speedy trial and due process. (See Notice of Mot. (Docket Entry # 3-3) at 2.)

In opposition to this motion, the Assistant District Attorney ("ADA") prosecuting the case provided an affirmation explaining why the DA's Office had delayed so long in indicting Decker. (See Affirmation in Resp. to Def's Omnibus Motion (Docket Entry # 3-3).) The ADA affirmed as follows: Decker had always been the prime suspect in the Mason case, but in 1987 prosecutors lacked direct evidence linking him to the murder. (Id. at 5-7.) Instead, the DA's Office determined that the case would have to be built entirely on the testimony of witnesses who, at the time, were either uncooperative, not credible, or both. (Id.) Many of the witnesses were drug addicts, who would not have presented themselves well before a jury. (Id.) Other witnesses simply refused to testify or assist the investigation because they were intimidated by Decker. (Id.) In light of these problems, the DA's Office decided that there was not enough evidence to convict Decker, and closed the case without seeking an indictment. (Id.) Fifteen years later, however, two police detectives decided to re-open the investigation. (Id.) Their hope was that advancements in laboratory technology would reveal physical evidence that was previously undiscoverable. (Id.) The project failed. (Id.) The lab tests did not turn up any new evidence, but, when, as part of the effort, the DA's Office re-interviewed the original witnesses, prosecutors realized that with the passage of time the quality of the witnesses had improved. (Id.) The witnesses were no longer abusing drugs and were now willing to testify. (Id.) The DA's Office therefore decided to go forward with the prosecution using the evidence available in 1987. (Id.) The ADA also submitted an affirmation from the prosecutor originally handling the case in 1987, and an affidavit of a detective involved in the original investigation. (See Ltr. of Wanda L.

DeOliveira dated Feb. 25, 2003 (Docket Entry # 3-3).) Both documents supported the allegations contained in the ADA's affirmation.

Decker did not provide any evidence to the court except proof that he was a suspect from the very beginning of the investigation.

The New York Supreme Court, Richmond County, denied Decker's motion without a hearing. (N.Y. Sup. Ct. Decision & Order of April 29, 2003 (Docket Entry #3-3) at 4.) It fully credited the ADA's explanation for the delay, noting, "Defendant does not controvert the facts alleged in the District Attorney's response papers." (Id. at 2.) It stated that "[c]ogent reasons for delay have been advanced by the prosecution," and it found "no indication that the prosecution acted in bad faith or deliberately delayed in order to gain a tactical advantage." (Id. at 3.) The court also found that Decker's capacity to present a defense was not harmed by the delay:

> Since defendant made a statement to the police, his version of the events, and his activities and associates at the time of the murder have been memorialized. The murder weapon was recovered and preserved. The crime scene processed, photographed and videotaped. The investigating detectives are available. While the People's witnesses may be more presentable to a jury than they were fifteen years ago, their prior statements, substance abuse problems, criminal records and the passage of time will provide the defendant's attorney with a fertile field for cross-examination.

(Id. at 4.) Under these circumstances, the court concluded that there was no factual basis for Decker's assertion that he was prejudiced by the delay. (Id.)

On November 23, 2004, a jury convicted Decker of murder in the second degree (Trial Tr. (Docket Entry #3-22) at 50), and Decker was later sentenced to twenty-five years to life in prison. (Pet. for Writ of Habeas Corpus (Docket Entry #1) at 1.)

Decker appealed his judgment and conviction to the New York Supreme Court Appellate Division, Second Department, challenging, among other things, the trial court's denial of his

motion to dismiss the indictment. (See Def. App. Br. (Docket #3-23).) After the Appellate Division affirmed his conviction, People v. Decker, 51 A.D.3d 686 (2d Dep't 2008), Decker sought further review from the New York Court of Appeals.

On June 9, 2009, the New York Court of Appeals affirmed the order of the Appellate Division. It held that, under the New York Constitution, Decker "was not deprived of his due process right to prompt prosecution." People v. Decker, 13 N.Y.3d 12, 16 (2009). The court implicitly adopted the findings of the trial court, stating that prosecutors decided to delay seeking an indictment because the witnesses were initially afraid to testify against Decker, and because they "also wanted to conduct further investigation, given the condition of the witnesses and the lack of physical evidence against the defendant." Id. at 15. It agreed that there was "no indication that the decision [to defer prosecution] was made in anything other than good faith." Id. The court also concurred with the trial court's finding that the delay did not significantly impair Decker's ability to mount a defense. Id. Specifically, it noted that, while "[t]he rehabilitated witnesses definitely made a better appearance at the trial than they would have in 1987 . . ., the jury was aware of their past conduct and the witnesses were subject to cross-examination." Id. at 16.

On July 12, 2010, Decker timely filed the Petition pursuant to 28 U.S.C. § 2254.

## Discussion

### Standard of Review

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." With a few exceptions not relevant here, the court will not consider any claim

4

that has not been first fully exhausted in state court. See 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted). If the state court reaches the merits of a claim asserted in a § 2254 habeas petition, the state court's decision is reviewed under the especially deferential standard set forth in § 2254(d). If the claim is presented to a state court, but that court does not reach the merits, then the claim is reviewed de novo. See Cone v. Bell, 556 U.S. 449, 472 (2009). In all cases, however, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut this presumption by "clear and convincing evidence." Id.

## Analysis

Decker argues that the fifteen year delay between the homicide and his indictment deprived him of his constitutional rights to a speedy trial and due process. These claims are without merit.

As a preliminary matter, the court notes that while Decker did fairly present these claims to the Court of Appeals, cf. Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y Aug. 1, 2011) ("A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971))), the state court did not reach the merits of his claim. Rather, the Court of Appeals expressly and exclusively decided the claims on state law grounds. See Decker, 13 N.Y.3d at 14 n.1 (distinguishing the right to be free from unjustified delays in prosecution under

the New York Constitution from the corresponding right under the United States Constitution). Accordingly, the court reviews Decker's claims de novo.

Decker has not alleged a cognizable violation of his right to a speedy trial. It is settled law that a delay in prosecution does not implicate the speedy trial guarantee. See United States v. Elsbery, 602 F.2d 1054 (2d Cir. 1979). "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the Sixth Amendment." United States v. Marion, 404 U.S. 307, 320 (1971). The Supreme Court has explained that this is because, until then, "a citizen suffers no restraints on his liberty and is not the subject of public accusation." Id. at 321. While Decker contends that he was "effectively arrested" in 1987 when he was questioned by the police (Pet. at 13), the Court of Appeals correctly noted that he "remained at liberty on the murder charge until after his indictment and, since he was not arrested during the initial investigation, was not subject to the anguish or public opprobrium often surrounding pending proceedings." Decker, 13 N.Y.3d at 15. Accordingly, Decker's right to a speedy trial is not at issue in this case.

Decker does assert a recognized claim under the Due Process Clause of the Fourteenth Amendment, but he falls well short of proving that a violation actually occurred.

A prosecutor's delay in bringing an indictment can in rare circumstances constitute a denial of due process. See Marion, 404 U.S. at 324. But the burden is on the defendant to show, first, that the delay was a "deliberate device to gain an advantage over him"; and, second, that this effort was successful, causing "actual prejudice" to his defense. United States v. Gouveia, 467 U.S. 180, 192 (1984).

Decker points to no evidence, let alone clear and convincing evidence, to rebut the state courts' findings that the State did not delay the indictment in bad faith and that Decker's defense

6

was largely unaffected by the delay. The Court of Appeals agreed with the trial court that the State's explanation for the delay was credible. It found in the record "no indication that the decision [to delay Decker's indictment] was made in anything other than good faith."[1] Decker, 13 N.Y.3d at 15. Decker is unable to provide evidence to the contrary. His allegation that the "length of inactivity on the part of the prosecutor's office was calculated to give the prosecution the benefit of an unfair tactical advantage" (Pet. at 14) is conclusory. Similarly, Decker provides no factual support for his theory that the State delayed the indictment because key witnesses were "slated for state-funded, prosecution-led cleanup of their lives, ostensibly for the sole purpose of facilitating a prosecution of this case" (Pet. at 7), or that he was finally prosecuted "in direct retaliation and in retribution for any one or more of the past failure(s) of the Richmond County District Attorney's office to imprison Wayne Decker" (Reply to Opp'n 8). Decker also fails to present evidence to rebut the state courts' finding that the delay did not substantially impact his defense. The trial court found that all of the tools needed to mount a vigorous defense were still at Decker's disposal in 2002, and that, if anything, the passage of time undermined the State's case because it would add to the witnesses' credibility problems. (See N.Y. Sup. Ct. Decision & Order of April 29, 2003 at 4.) The Court of Appeals, while perhaps disagreeing with the trial court about the net effect of the delay on the credibility of the State's witnesses, see Decker, 13 N.Y.3d at 15, adopted the trial court's ultimate finding that the Decker's defense was not seriously harmed. It noted that there was "no indication that the defense was significantly impaired by the delay." Id. On these facts, the court cannot conclude that the State's delay in indicting Decker was a "deliberate device to gain an advantage" over Decker, or that Decker

---

[1] In New York the existence of a "good faith belief" is generally an issue of fact. See Argentina v. Otsego Mut. Fire Ins. Co., 86 N.Y.2d 748, 749 (1995).

7

suffered "actual prejudice' as a result of the delay. Consequently, the State did not deny Decker due process of law.

Although the vast majority of the Petition is devoted to challenging the pre-indictment delay, reading Decker's submission liberally, as the court must, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), it is possible discern two other potential claims independent of those rooted in the pre-indictment delay: that the state trial court's admission of an unnotarized affidavit into evidence violated due process; and that, at trial, the burden of proof was improperly shifted to Decker.

These claims, to the extent Decker actually asserts them, are either unexhausted or procedurally barred. Neither claim was raised on direct appeal, nor has Decker collaterally attacked his conviction in state court. If Decker can still move to vacate his judgment in state court on these grounds, these claims are unexhausted. Otherwise, they are procedurally barred. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that, if a prisoner did not fully litigate his habeas claims in state court and the opportunity to do so has passed, the claims are procedurally defaulted). If the claims are procedurally barred, the court must deny them, see Wainwrigth v. Sykes, 433 U.S. 72, 84-85, 87, and if the claims are unexhausted, the court may nevertheless deny them on the merits, see 28 U.S.C. § 2254(b)(2).

These claims are without merit, and so they are denied. In order to prevail on his claim that the trial court's admission of an unnotarized affidavit deprived him of due process, Decker "must show that the error was so pervasive as to have denied him a fundamentally fair trial . . . [and that] the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d

16, 18-19 (2d Cir. 1985). Decker's conclusory statement that the use of this affidavit violated his due process rights does not meet this standard. Insofar as Decker argues that he was required to prove his innocence, this claim is baseless. The burden of proof remained at all times with the prosecution and the jury was so charged. See Trial Tr. (Docket Entry # 3-21) at 40-41 (charge).)

**Conclusion**

For the reasons set forth above, Decker's Petition for Writ of Habeas Corpus is DENIED. No certificate of appealability shall issue because Decker has not made a substantial showing of the denial of a constitutional right for the purposes of 28 U.S.C. § 2253.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
June 22, 2012

NICHOLAS G. GARAUFIS
United States District Judge